Morning. Morning, Your Honor. My name is Brian Isaacson. May it please the court I'd like to Schedule eight minutes for the opening seven minutes for rebuttal. Very well. I'm tracking your time. I'll try to help you. Okay. Thank you The the reason that we're here is number one is to ask the court to review Sorry to make the determination de novo that our client Kurt Sollberger is entitled to the safe harbor under section 1058 of the Internal Revenue Code in this case, we have a Transaction that was a deposit into an account There there was Before it before you get there if I if I may Mr. Isaacson as you know, the tax court relied on Grote and McKay Realty Inc as the eight criteria if you will for its determination That a sale had occurred here Do you believe that that is in fact the controlling law if you will since we don't have a specific case that says so in the Ninth Circuit as to whether a Sale occurred, but we believe that section 1058 the safe harbors the controlling law here the second thing that I was going to ask the court to do is to reverse the motion for summary judgment and then allow a Evidentiary hearing on the Grote versus McKay factors. Let me talk about the Grote versus McKay factors. Is that Under Grote versus McKay. I think we have a Ninth Circuit decision that doesn't use the eight factor test Well, what we're saying is that one of the factors in the test needs to be Whether or not the property was obtained by deception Whether or not there was a theft Transfer was induced by fraud, which is what what we really have here And that is not part of the Grote versus McKay factors Although it can be a part of the eight factor test in terms of the way that the test should be analyzed I think what we do in the Ninth Circuit is we just determined the point at which the benefits and burdens of Ownership were transferred. Well, that's the under gray and it looks to me like here they were Transferred when he purportedly pledged the stock because he didn't have any right to Get it back for seven years, but he didn't try to get it back during the moments or days between the time he Supposedly pledged and it was sold. Well a pledge requires a loan. Am I am I correct? Well what you look at in tax law is economic substance. The paperwork can't turn a Sale into Something else if it does not represent the economic substance and what we have held in accord with what the Supreme Court has held is That the bright and shining light is a non-recourse loan, which is what you have here Well the quiet what we're saying is that we don't even have a loan here In fact, there have been several I had a loan of you had a loan agreement, but it's not we have a loan agreement That contains two parts one is are the pre-loan covenants The other are the post loan covenants and there have been several courts including Callaway that have determined that that there was no loan in this transaction that there was just Simply a deposit sale Well, it's it's a deposit into an account and the reason that it's not a sale sale is is under the pre-loan covenants I thought either it's a loan or it's a sale After all he transfers stock And they transfer money to him. Well, it's it's a deposit in this case There are three three. There are three steps to the transaction The first is the deposit into the account if if if there were a legitimate lender, then there would be a pledge Which case there would be a sale but under the pre-loan covenants. There's only a deposit here because It's determined that there was no room and what what point Did mr. Saul Berger conclude that this was a fraud? well It wasn't actually until the after the IRS had out of the transaction anything the He made three loan payments and I used that term based on what the document said He did not know at that point that there was a problem He didn't know that there was a problem until Derivium filed bankruptcy and then the IRS later audited him Okay So so the he made the loan payments until the filing of the bankruptcy Until the filing of the bankruptcy and then and then what happened was the IRS audited him He didn't even learn that there was a sale until after the IRS informed him of the fact loan Payments did he make regular pain maybe he made regular payments He truly believed that there was a loan and that was what he what he had contracted for. He Fact he he didn't learn that there was a sale until almost five years after when the IRS audited him and How much did he pay total compared to the 90% price that he got? Well You mean as far as the interest how much did they give him and how much did he give them? He got 90 percent. The pledge was for a million dollars. He got 900,000 and how much did he pay them? he paid them a hundred but he's filed a lawsuit now to recover the hundred and also recover the collateral and That that lawsuit is still the collateral was sold almost immediately wasn't it? Yeah, which he didn't know at the time How can he recover that if it's already been sold don't you have a Sale for value to somebody or was it a somebody and a co-conspirator somewhere? there's a co-conspirator with with Wachovia Bank and Morgan Keegan and the what happened was The sale the sale took place between The conspiracy was between some brokers on the inside of Morgan Keegan and Inside of Wachovia who are working in conjunction with Derivium and what we've argued is that rescission is a remedy Where there's fraud involved and there was clearly fraud involved. You don't get how you get it back It's kind of like if you pledge a guitar to a pawnbroker and he sells it before your redemption time is up That is is an analogy, but I I guess I guess the question why isn't it a precise Analogy. Well, it's it's not a precise analogy because with a pawnbroker The pawnbroker has the right to sell the shares once they're pledged not until the redemption time is expired he can't sell the guitar until the time for the pledge or to redeem it has Ended. Well, the contract doesn't allow anybody to sell their shares until such time as there's a legitimate loan in play And I think the difference is is I think the pawnbroker analogy Everybody knows what the rules of the game are here here what here they were free to sell the stock as soon as The Couple of days had passed and during those couple of days I think it was days might have been longer There was no attempt made to redeem it Well, the the agreement looks like when they sold the stock they had a right to under the agreement No under the agreement it says that only a lender can sell the shares and and and The reason for the agreement is to preclude the sale to fund the loans and here you had a misrepresentation One that there was a lender to that. There was a legitimate loan and then Not only that the tax court in Judge Holmes Minority opinion ruled that what what we really have here is a sale a sale of his stock deposited with a theft of 10% that's right. And I don't know you wanted to stay with us, but you're under your seven minutes If you wish you save that for rebuttal, but it's up to you yeah, I'd like to go a little bit further because respondent has put in the Anschult's case and Respondent has specified four factors that I know that the panel is is considering The first is whether or not the purchaser bears the risk of loss an opportunity for gain well, what you have is a transfer to a thief and Theft of the collateral and so You don't have And then you have the thief selling the shares so you don't have under the contract a transfer of the risk of loss because Under the pre-loan covenants in the contract There's the right to the immediate return of the shares if all the conditions aren't fulfilled exercise that but well didn't try to He didn't Hit wait, are you saying he didn't exercise the immediate right to the return? Or the agreement says the party either party can terminate the agreement prior to the lender Receiving the notes or entering into what they called hedging transactions. So that's phony. They're not hedging transactions they're not hedging but here the lender did receive the notes and Although The lender had not entered into the so-called hedging transactions Solberger did not Exercise his right to terminate at that point But there was no lender and and that's that's where the the disparity is is the tax court and their decision That they held there was no I guess that's a part of your argument. I don't understand There was it's got to be either a lender or a buyer because they get notes and they pay money And if you say there no, there's no lender it seems like well, that's what the IRS is saying Well, the well that right we agree that we all agree that there was no lender But what we're saying is that there's a deposit and a theft what the IRS is saying is that there was no lender But yet we can apply the post loan covenants to determine whether the safe harbor under 1058 is Defective and and we're saying you can't have it both ways if there's no lender You can't analyze the safe harbor under 1058 as though there has been a loan You have to treat the transaction as just simply a deposit Where he has the right to the immediate return and he's exercised that right and he's filed a lawsuit To rescind the contract to obtain the return of his is understand. Why would he deposit the stock? Well there there there are two that I guess there are two steps It's it's common in brokerage accounts where you can deposit stocks in a brokerage account You can put them in straight name All right You put them in street name and then you later take a loan out under reg T and and only that but also the reg T Requirements and every single brokerage contract it allows the brokerage house to sell the shares to sell Hypothecate transfer the shares because they go into street name at that You're saying this is like putting them in street name and borrowing against that collateral Yeah, that was the intention of the transaction Only unlike a broker loan Derivium Misrepresents the transaction and the thing that would seem to be unlike the standard brokerage loan is it's non-recourse Well, that's that's a good point. I mean, but Never the response to it well, I mean as I recall the difference between Frank Lyon, and I can't remember the other Supreme Court case the bookend and in our case in sex Non-recourse is the first thing you look for Well, I think non non recourse is a factor But I think before you can go to recourse versus non recourse you have to ask the question of whether there's a loan Is there anything in the record to indicate that your client had other colleagues or friends who had done similar? Transactions with this entity. Well, the tax court opinion indicates that there were over 1,400 transactions there. There's another case on appeal Callaway cases on appeal in the 11th Circuit which we had argued and In January, but I my specific question that was whether your client Was aware do you have friends or others? Does the record say your friend you have friends or others that he knew that had participated in this program? No, our our client did not. Okay Okay, you want to save any of your Sure, what I'd like to do is is just Take a minute and talk about the pre loan versus the post loan covenants on the safe harbor up to you under section 1058 What Under that provision if you look at the post loan covenants our client has the right to the immediate return of the collateral and Thus he does follow in The provisions under Samueli which we quote on page 14 of our brief, so he's able to terminate the loan at the contract Upon demand before there's a legitimate loan here. And what we're saying is that Actually, if you look at the substance or reform of the transaction, but you have as a deposit and a theft You don't you don't have a pledge and a loan Okay You got 35 seconds, but okay Morning may please the court Andy Weiner for the Commissioner of Internal Revenue benefits and burdens test to determine whether there's been a sale for tax purposes follows from the Venerable doctrine of tax law that you follow a substance of reform that test applies to this case to determine whether the taxpayer has income from the sale of The FRN's the floating rate notes To OPTEC and as the tax court founds the undisputed evidence in this case supports that there was a sale At every relevant factor that you look to now give the reasons why You think that Despite OPTEC selling the stock before they had a right to sell the stock. It should not be treated as Akin to a deposit of stock with a stockbroker and street name and then misconduct by the stockbroker I think what you look to your honor is you look to the agreement and I don't think there's any I'm looking at it Show me where I do not think that there's any suggestion in the agreement that that the fact that the loan was funded from independent sources other than the the FRN's other than the notes is a Condition precedent and so therefore what you have is by the terms of the agreement itself The loan closes upon the surrender of the of their notes and the funding of the loan and at that point Taxpayer may have an argument that that OPTEC breached the loan breached the term of the loan And it appears that they are seeking a remedy by suing OPTEC for damages under that breach However, that does not mean that that they had intended to enter into this transaction and that the transaction actually went Through that you know governed by the master agreement the one thing that kind of raised a question in my mind Once I saw non-recourse I assumed that well he gets 90 cents on the dollar for his stock and in exchange He gets a package of tax benefits worth considerably more than the dime Seem kind of straightforward, but since it is non-recourse, I can't figure out why he's paying him back Well, you're on I don't think he the I don't think the the loan is really designed to be paid back Which is why it's a city, but he says he was making payments on it He didn't make three payments. It's so he the the paid a hundred thousand dollars. No, no, no No, I believe that I believe the Taxpayers Council misspoke He received nine hundred thousand dollars to close the transaction And then as provided under the master agreements OPTEC Determined how much interest came in on the note? the the the the crude interest on the note and then Calculated the amount of interest that was owed under the master agreement though the purported loan that was entered into between the parties and And billed taxpayer for the difference and what do you get billed for you got billed for about a thousand dollars? want in one quarter about $1,300 in another quarter and I don't believe that there's a check in the record to determine how much he paid for the third quarter of the payment Let's say it was between a thousand payments were de minimis then They were relatively to the compared to them. Yeah, the the the nine hundred thousand dollars that he received Yes, and so what you have is you have your honor. Where do we look in the agreement to find out? What the deal is on these buildings? I'm sorry. I didn't catch the last where do we look in the agreement to find out what the deal is on those billings? Oh the well the agreement provides that That's There is a term in the agreement that talks about that they will be billed on a quarterly basis, I believe it is in schedule a if you look at interest payments So it would be paragraphs You Paragraph 4 describes the interest rate on the notes that were surrendered and paragraph 5 Discusses the interest payments on the collateral now. Yes. You are number It would be 35 your honor. Thanks, and it talks about quarterly net interest payments that are due and You also have another factor of that which would be paragraph 6 which would be a late payment penalty It looked to me like the way it's structured being non-recourse And the like that at the end of the seven-year term that in effect the taxpayer had the right to either Try to get it back by paying the amount that was owed or just letting it go Is that the correct analysis of what the agreement provided? Yeah, they they they effectively had Sold the the notes for $0.90 with a right to redeem in seven years So they basically had a call option in effect They had a call option, which is completely consistent with there's a case that we say somewhat a somewhat old case in the tax court in which they say That's completely explicable by the fact that when you take a smile a mild haircut on the purchase price With a call option that that is that is something that is a little bit a variant from a sale But I say on the less and and that is effectively what you have here. He the taxpayer in this case completely surrendered the benefits and burdens of Ownership in the notes for the duration of the seven years and then at the S seven years Got to walk away and keep the entire amount of the proceeds that they received all $900,000 and that your honors we submit is is a sale under the tax law regardless of whether taxpayer believed it or not Let's say I guess at the end of the seven years Unlike the guitar. He doesn't get his original guitar back if it were an honest outfit. He just gets An equivalent number of shares of the same company. Yeah, and there I think your honor is perhaps a little bit of a wrinkle because We're dealing with fungible property. That's what I'm asking. Yeah, you consistently see case law You know struggle or reconcile I would say if it was a guitar and he had a right to get his guitar back in seven years That'd be a lot more like a loan rather than just a call option paragraph 8 makes clear that Elvis has left the building right Paragraph 8 is that's the return of the collateral where it says they can yeah. Yeah fungible, basically yeah, but the thing is is that the Supreme Court has has said that you know in the Supreme Court in in Richardson the first of the the two, you know major Supreme Court cases at issue here the Supreme Court says that listen It's not important that you get the exact same stock back when you deposit it in a safekeeping account or you deposit in the subordination Loan context where you know, it was a margin account but So that alone is not dispositive a sale and that's not what the government is arguing in this case what we're saying is that you look to the benefits and the burdens of ownership, which includes the fact that Optech was able to put the collateral in its in its name that Optech had the ability to sell it without notice to taxpayer that that Optech had the use of enjoyment of The the notes whether they sold it or not Yeah for the entire duration of the seven years and if at the end of the seven years he says he wants it back then Optech has to go out into the market and and and get it And and if you don't if Optech doesn't do it, then you have a contract claim against Optech but what you do have from the taxpayer standpoint is you have a sale and and and That is You're sticking with it Unless there are any other questions. I think I don't think so Oh, I believe you've got like 30 seconds left counsel what you have that if you'd like Well, we disagree with everything that he's saying and we would like a case remanded to the tax court for at least an evidentiary Hearing on the intention of the parties in light of the pre-loan covenants and the post loan covenants If you take a look at section 5 of the master loan and financing agreement That ability to sell is only during the loan term and the evidence is is that the sale took place? But before the loan term is defined on schedule a In this case, there was a deposit and a theft I think we got your point. Thank you very much. The case just argued is submitted and the court stands adjourned for the week
judges: Schroeder, Kleinfeld, Smith